**In the Matter of the Complaint of FUN TIME BOAT RENTAL & STORAGE, LLC d/b/a Fun Time Boat Rentals as a Registered Owner of the 26–foot, JC Manufacturing, Inc. Model "Tritoon" pontoon boat, AZ 9194 BE, Hull # BSU23155D202 for Exoneration or Limitation of Liability.**

**No. CV 04–2139–PCT–PGR.**

United States District Court, D. Arizona.

March 20, 2006.

Mark D. Holmes, McKasson Klein & Holmes LLP, Costa Mesa, CA, Michael Gary Kelley, Thomas Thomas & Appel PC, Benjamin C. Thomas, Thomas Thomas & Appel PC, Phoenix, AZ, for Fun Time Boat Rentals & Storage, LLC, Plaintiff.

Douglas Dean Sutherland, IV, Sutherland Law Firm, Kingman, AZ, for David Gonzales, Janice Gonzales, Kimberly Gonzales, Defendants.

### ORDER and OPINION

ROSENBLATT, District Judge.

Pending before the Court is the Motion for Summary Judgment by Plaintiff Fun Time Boat Rental & Storage, LLC (doc. # 31), and the Request for Continuance to Conduct Discovery (doc. # 35) filed by Kimberly Gonzales and her parents, David and Janice Gonzales. Having considered the parties' memoranda in light of the evidence of record, the Court finds that the former motion should be granted and that the latter motion should be denied.

*Background*

Fun Time Boat Rental & Storage, LLC ("Fun Time") seeks in this action to exonerate or limit its liability pursuant to the Limitation of Liability Act, 46 U.S.C.App. § 181 et seq., and Rule F, Supplemental Rules for Certain Admiralty and Maritime Claims, for any claims against it arising from a boating accident on Lake Havasu on March 24, 2004 in which Kimberly Gonzales was seriously injured.

The uncontroverted facts of record underlying this action, very briefly summarized, include the following. During the morning on March 23, 2004, Corrin Osborne rented a 26' pontoon boat from Fun Time for two days to use on Lake Havasu by her and several female companions, all of whom appeared to Fun Time personnel to be college girls. It is Fun Time's policy to refuse to allow any renter to take possession of a boat if the renter, or anyone in the renter's party, appears to be intoxicated or drugged.

Prior to Osborne being allowed to rent the boat, Fun Time required Osborne to provide her driver's license and to execute a boat rental agreement. The rental agreement required Osborne in part to be the sole person authorized to operate the boat and prohibited her from allowing anyone else to operate it. It further required Osborne to operate the boat in a careful and prudent manner in compliance with all applicable laws and to assume the responsibility for the negligence of her passengers. By signing the rental agreement, Osborne acknowledged that she was familiar with the safe operation of the boat and knew the rules and safe operation of watercraft. The rental agreement further warned Osborne that no intoxication would be tolerated on the boat and that operating the boat under the influence of drugs or alcohol would result in the forfeiting of the security deposit, the confiscation of the boat, and the cancellation of the rental agreement.

Fun Time's personnel conducted a pre-rental inspection of the boat with Osborne using a form checklist, during which time she was shown how the boat ran and worked and was shown the boat's safety-related gear. Fun Time had copies of *The Boater's Guide of Arizona, A Handbook of Boating Laws and Responsibilities* (2003 Ed.) available on its service counter for the use of its renters at the time Osborne signed the rental agreement; the guide sets forth a summary of Arizona boating laws, including the prohibitions against drinking and driving and against allowing passengers to ride on the bow of a boat operating above wakeless speed. When Osborne returned the boat to Fun Time towards the end of the afternoon on May 23rd, neither she nor any of her companions made any complaint to Fun Time

personnel about the vessel or how it operated during the day.

Osborne took the boat out again early on the next morning, March 24, 2004, with some of her companions. During the late afternoon on March 24th, while in the area of Copper Canyon, Osborne and her companions picked up several people, none of whom were members of her group, who needed a ride back to the London Bridge area; included in this group were Kimberly Gonzales and Tanner Wakefield. At the time the boat reached the "no wake" buoys outside Thompson Bay it was being driven by Crystal Vanillo, one of Osborne's companions. At that time Gonzales and Wakefield were dancing on the bow outside of the gated interior of the boat. When Vanillo slowed the boat down at the "no wake" buoys Gonzales and Wakefield fell overboard, with Wakefield falling uninjured to the side of the boat, and Gonzales falling in front of the boat and going underneath the boat into the propeller, which resulted in her receiving a skull fracture, a broken forearm and wrist, and numerous lacerations. As a result of the post-accident investigation, Vanillo was charged with felony endangerment and two misdemeanor counts of operating a boat while intoxicated.

At the time Osborne rented the boat, it was fully railed around the passenger area and all four gates of the boat had manufacturer-installed decals, bright yellow in color with black print, warning passengers to stay inside the deck rails and gates while the boat was underway; the warning decals were placed on the uppermost surface of the gates.

Fun Time and its employees had no knowledge of and no contact with Gonzales prior to the time of the accident, and no Fun Time personnel were on the boat at the time of the accident.

On March 24, 2005, one day prior to their filing an answer in this action, Kimberly Gonzales and her parents filed a negligence action in the Mohave County Superior Court against Fun Time, Corrin Osborne, Crystal Vanillo, and various fictitious defendants. The complaint alleges that Fun Time was negligent in failing to verify whether Osborne had insurance for the rented boat as required by Fun Time's boat rental agreement and in failing to properly warn passengers, including Gonzales, against riding on the front portion of the boat. The complaint also alleged that Vanillo was negligent because she, while under the influence of alcohol, was operating the boat too fast for the conditions and then suddenly cut the boat's throttle, causing Gonzales to be thrown overboard. In accordance with Supplemental Rule F(3), the Court entered an order on July 29, 2005 enjoining the prosecution of the state court action against Fun Time.

## Discussion

### A. Jurisdiction

 Although no party has contested the issue, the Court concludes that this action falls within the Court's admiralty jurisdiction under 28 U.S.C. § 1333(1). The Supreme Court has established a two-part test for such jurisdiction, the first of which, the location test, requires in relevant part that the tort occur on navigable water. *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534, 115 S.Ct. 1043, 1048, 130 L.Ed.2d 1024 (1995). The locality test is readily satisfied here because Gonzales' injuries were inflicted by a boat cruising on Lake Havasu, which is a navigable body of water. *H2O Houseboat Vacations, Inc. v. Hernandez*, 103 F.3d 914, 916 (9th Cir.1996) ("Here, H2O satisfied the location prong because the injury occurred on Lake Havasu, a navigable waterway.")

The second prong of the test, the connection test, raises two issues: first, the incident must have a potentially disruptive

impact on maritime commence, and second, the activity giving rise to the incident must have a substantial relationship to traditional maritime activity. *Jerome B. Grubart, Inc.*, 513 U.S. at 534, 115 S.Ct. at 1048. The first subpart of the connection test is met here because injury to a person who has fallen overboard could potentially lead to restrictions on the navigational use of the waterway. *Cf. Neely v. Club Med Management Services, Inc.*, 63 F.3d 166, 179 (3rd Cir.1995) (en banc) (Court found that the first part of the connection test for admiralty jurisdiction was met by an incident in which a scuba diver was injured when she was sucked into a boat's propellers because "[i]njury to a seamen in navigable waters could lead to restrictions on the navigable use of the waterway ... during necessary investigations into the accident.")

The second subpart of the connection test is easily met here because the accident occurred while the boat was in transit on Lake Havasu and "[n]avigation of boats in navigable waters clearly falls within the substantial relationship[.]" *Jerome B. Grubart, Inc.*, 513 U.S. at 540, 115 S.Ct. at 1051; *Neely*, 63 F.3d at 179; *In the Matter of the Complaint of Paradise Holdings, Inc.*, 795 F.2d 756, 760 (9th Cir.), *cert. denied*, 479 U.S. 1008, 107 S.Ct. 649, 93 L.Ed.2d 705 (1986) (Court concluded that a negligence claim by a bodysurfer who was injured by a ship's propeller while the ship was in transit in navigable waters had a substantial relationship with traditional maritime activity.)

## B. Limitation of Liability Act

The Limitation of Liability Act limits a shipowner's liability for any damages arising from a maritime accident to the value of the vessel and its freight, provided that the accident occurred without the owner's "privity or knowledge." 46 U.S.C.App. § 183(a). Supplemental Rule F provides that a complaint brought pursuant to the Act "may demand exoneration from as well as limitation of liability."

■ When a shipowner asserts a claim for exoneration or limited liability under the Act, a burden-shifting framework is employed to evaluate the shipowner's eligibility for limited liability. First, the claimants seeking to recover damages must demonstrate the shipowner's liability for their loss, either by showing the owner's negligence or the unseaworthiness of the vessel. *Walston v. Lambertsen*, 349 F.2d 660, 663 (9th Cir.1965), *cert. denied*, 382 U.S. 980, 86 S.Ct. 553, 15 L.Ed.2d 470 (1966). If the claimants fail to establish liability, then the shipowner is entitled to exoneration and there is no need to consider the limitation claim. *In the Matter of Hechinger*, 890 F.2d 202 (9th Cir.1989), *cert. denied*, 498 U.S. 848, 111 S.Ct. 136, 112 L.Ed.2d 103 (1990) ("The whole doctrine of limitations of liability presupposes that a liability exists which is to be limited. If no liability exists there is nothing to limit."); *accord, Rautbord v. Ehmann*, 190 F.2d 533, 537 (7th Cir.1951) (Court stated in an action pursuant to § 183(a) that "it appears to be rather firmly established that the owner of a boat operated by another party is entitled to exoneration from all liability for damages occasioned without fault or negligence on the part of the operator[.] ... If no liability is found to exist, the absence of all liability is to be decreed, and there the matter ends.") Only if liability is established does the burden shift to the shipowner to establish its lack of privity or knowledge.

## C. Fun Time's Arguments

■ Fun Time argues in part, and the Court agrees, that it is entitled to exoneration as a matter of law because Kimberly Gonzales and her parents, the only purported claimants, have failed to set forth any significant probative evidence estab-

lishing Fun Time's liability for the incident in which Gonzales was injured.[1] The Court concludes that Fun Time has properly supported its summary judgment motion by producing evidence showing that there are no genuine issues of material fact regarding any alleged negligence on its part.[2]

Fun Time, based on what it believed to be the negligence theories on which Kimberly Gonzales and her parents are basing, or might base, their claims against it, sets forth in its motion several reasons, supported by evidence, why it cannot be held liable for Gonzales' injuries on any theory of negligence: (1) that the reckless behavior of Vanillo and Gonzales was the proximate cause of Gonzales' injuries; (2) that it did not breach any duty to Gonzales to ensure that Osborne had insurance because neither federal maritime law nor Arizona law establishes any such duty and the boat rental agreement that Osborne signed did not require her to have insurance, and that the lack of insurance did not cause the accident; (3) that it cannot be liable for negligent entrustment, assuming that Gonzales even raises the issue, because the boat rental agreement required that only Osborne was to operate the boat, and (4) that it did not breach any duty to warn Gonzales about the danger of riding on the bow of the boat because the boat had a conspicuous warning label at each of its four boarding locations warning passengers to stay inside the deck rails while the boat was in motion, and that A.R.S. § 5-341 prohibits the operation of a motorized watercraft in excess of a wakeless speed while anyone is riding on the bow; and (5) that the opinion of its expert marine surveyor establishes that no deficiencies or defects on the boat caused or contributed to Gonzales' injuries.

### D. Fed.R.Civ.P. 56(f) Request

Kimberly Gonzales and her parents, the purported claimants in this action, have to date produced no significant probative evidence establishing that Gonzales' injuries resulted from any negligence on the part of Fun Time; they have not in fact filed any response going to the merits of Fun Time's motion and have not objected to any of the evidence submitted by Fun Time. Instead, Gonzales and her parents timely filed a Request for Continuance to Conduct Discovery pursuant to Fed. R.Civ.P. 56(f). Pursuant to Fed.R.Civ.P. 56(e), a party opposing summary judgment may not rest upon the mere allegations or denials of his pleadings but must set forth specific facts showing that there is a genuine issue for trial. Rule 56(f) is a safeguard against a premature grant of summary judgment in that it allows the opposing party who has not had sufficient time to complete discovery or otherwise to marshal facts to oppose the summary judgment motion to seek a continuance of the proceedings pending completion of discovery. The Court concludes that the pending Rule 56(f) request should be denied.

### (1) Lack of a Proper Claim

First, although Fun Time does not raise it as an issue, the record in this action does not establish that Gonzales and her parents have to date filed any claim that complies with the requirements of Supplemental Rule F(5), which provides that

---

**1.** Since it has no need to, the Court does not reach the issue of whether Fun Time has met its burden of establishing its lack of privity or knowledge.

**2.** Since Kimberly Gonzales and her parents have nowhere raised any issue concerning the boat's seaworthiness, the Court presumes that the bases of their claims against Fun Time are predicated solely on negligence.

[c]laims shall be filed and served on or before the date specified in the notice provided for in subdivision (4) of this rule. Each claim shall specify the facts upon which the claimant relies in support of the claim, the items thereof, and the dates on which the same accrued. If a claimant desires to contest either the right to exoneration from or the right to limitation of liability the claimant shall file and serve an answer to the complaint unless the claim has included an answer.

In a "Notice to Claimants" order (doc. # 11) entered on January 6, 2005, the Court required all persons asserting claims in this action to file a written claim with the Court as required by Supplemental Rule F no later than March 31, 2005. The order further required that if a claimant wished to contest Fun Time's right to exoneration or its right to a limitation of its liability, the claimant had to also file and serve an answer by the March 31st deadline.

Although Gonzales and her parents filed an Answer to First Amended Complaint for Exoneration or Limitation of Liability (doc. # 18) on March 28, 2005, that Answer does not contain the information required for a claim by Supplemental Rule F(5) and the Court cannot find in the record any actual claim from them meeting the rule's requirements. If Gonzales and her parents are not proper claimants in this action, they have no right to seek a continuance so that they may conduct discovery to contest summary judgment.

**(2) Failure to Comply With Rule 56(f)'s Requirements**

■ Even if the Court were to consider Gonzales and her parents to be proper claimants, it would still deny their Rule 56(f) motion because it agrees with Fun Time's argument that their request for a continuance fails to meet Rule 56(f)'s procedural requirements.[3] *Brae Transportation, Inc. v. Coopers & Lybrand,* 790 F.2d 1439, 1443 (9th Cir.1986) ("Failure to comply with the requirements of Rule 56(f) is a proper ground for denying discovery and proceeding to summary judgment.")

First, the Rule 56(f) motion is defective because it fails to include the required affidavit setting forth the particular facts expected from the requested discovery. *Brae,* 790 F.2d at 1443; *Mackey v. Pioneer National Bank,* 867 F.2d 520, 523–24 (9th Cir.1989) ("Rule 56(f) requires affidavits setting forth particular facts expected from the movant's discovery.")

Secondly, and, more importantly, the motion is also defective because it fails to establish how the discovery requested would preclude summary judgment. *Mackey,* at 524; *Barona Group of Capitan Grande Band of Mission Indians v. American Management & Amusement, Inc.,* 840 F.2d 1394, 1400 (9th Cir.1987) (Court concluded that Rule 56(f) motion was properly denied when movant, who failed to file an affidavit, did not claim that the requested depositions would uncover issues of material fact and did not explain how additional discovery would have affected the disposition of the case.)

Gonzales and her parents contend that they are requesting a continuance so that they can take the depositions of Robert Ballard, Fun Time's CEO, Ed Kirasich, a Fun Time non-supervisory employee, and Capt. Williams W. Dials, Fun Time's marine surveyor expert, all of whom submitted declarations in support of Fun Time's summary judgment motion. Gonzales and her parents, asserting that they were first made aware of Ballard, Kairasich, and Di-

**3.** The Court notes that the claimants did not file any reply to their Rule 56(f) motion and have thus not controverted any of Fun Time's arguments directed at the Rule 56(f) motion.

als through the summary judgment motion, that Fun Time has not made the declarants available for a statement or deposition, and that they have attempted to take their depositions but Fun Time objected, state that they need to depose Ballard and Kairasich regarding Fun Time's training and warnings procedures for first time boat renters, including what training was given to Osborne and Vanillo regarding the operation of the boat and regarding the danger of allowing passengers to ride on the bow of the boat, and that they need to depose Dials regarding the minimal experience a boat operator should have and whether Fun Time did anything to ensure Osborne and Vanillo had such experience.[4]

Gonzales and her parents do not, however, explain what issues of material fact precluding summary judgment would be uncovered from deposing Ballard, Kirasich, or Dials or why they believe such evidence exists.[5] *See Terrell v. Brewer,* 935 F.2d 1015, 1018 (9th Cir.1990) ("The party seeking additional discovery also bears the burden of showing that the evidence sought exists. Denial of a Rule 56(f) application is proper where it is clear that the evidence sought is almost certainly nonexistent or is the object of pure speculation.") They also do not explain why they could not sufficiently oppose the summary judgment motion from sources unrelated to Fun Time, *e.g.,* with evidence from Gonzales herself, or from Osborne and Vanillo, or from their own boating expert. *Mackey,* at 524 ("A Rule 56(f) motion must show ... why a party cannot immediately provide 'specific facts' demonstrating a genuine issue of material fact.")

Conspicuously absent from the Rule 56(f) motion is any supporting discussion of the relevant federal maritime law that governs this action. *Pearce v. United States,* 261 F.3d 643, 647 (6th Cir.2001) (Court noted that general admiralty law, not state law, governs tort claims arising from injuries in territorial waters.) In order to be entitled to a Rule 56(f) continuance, Gonzales and her parents must be able to show that additional discovery would create a genuine issue of material fact as to all elements of a negligence cause of action under admiralty law, and those elements, which are essentially the same as land-based negligence under common law, *Pearce,* at 647; *Withhart v. Otto Candies, L.L.C.,* 431 F.3d 840, 842 (5th Cir.2005), are: (1) the existence of a duty of care owed by the defendant to the plaintiff; (2) the breach of that duty of care; (3) a causal connection between the offending conduct and the resulting injury, *i.e.* proximate cause, and (4) actual loss, injury, or damage suffered by the plaintiff. *Pearce,* at 647.

Underlying the Rule 56(f) motion, as the Court understands it, are two assertions, the first of which is that Fun Time has a legal obligation and responsibility to adequately train individuals before allowing them to rent Fun Time's boats. Whether Fun Time owed any legal duty to Gonzales is a question of law, *Canal Barge Co. v. Torco Oil Co.,* 220 F.3d 370, 376 (5th Cir. 2000), and Gonzales and her parents have not cited to any admiralty case law supporting their training assertion. Although Gonzales and her parents never use the term "negligent entrustment" in their Rule

---

4. As training and warnings are the only issues on which Gonzales and her parents state they need discovery, the Court presumes that these are the only bases for their negligence claims against Fun Time and that there is no issue regarding lack of insurance, as raised in their state court complaint.

5. Fun Time states in its reply that it will stipulate that the "training" and "warnings" referred to in the Ballard, Kirasich, and Dials' declarations are the only "training" and "warnings" that Fun Time provided to Osborne and Vanillo.

56(f) motion, based on their cursory citation to *Tellez v. Saban,* 188 Ariz. 165, 933 P.2d 1233 (App.1996), one of the only two cases they cite in support of their motion, the Court presumes that they are attempting to rely upon negligent entrustment as a basis for their negligence claim. While maritime law recognizes the tort of negligent entrustment, *Churchill v. F/V Fjord,* 892 F.2d 763, 771 (9th Cir.1988), *cert. denied,* 497 U.S. 1025, 110 S.Ct. 3273, 111 L.Ed.2d 783 (1990), such a tort requires that the boat owner knew or should have known that the person to whom the boat was entrusted (in this case, Osborne) was likely to use it in a dangerous manner. *Id.; Joyce v. Joyce,* 975 F.2d 379, 385 (7th Cir.1992) ("[T]he essential thrust of the tort of negligent entrustment is that a shipowner can be held liable for negligent entrustment only if he knows or has reason to know that the person being entrusted is incapable of operating the boat safely.") Gonzales and her parents do not set forth what evidence of negligent entrustment exists that would be revealed by any of the proposed depositions. While they imply that Osborne and Vanillo were inexperienced, first time boat renters, they have not pointed to any evidence in the record that establishes that to be true [6], much less that Fun Time knew or should have known that Osborne was incompetent to operate the boat.[7]

■ Gonzales and her parents also assert that Fun Time had a legal duty to warn Osborne and Vanillo about the dangers of allowing passengers to ride on the bow of the boat while it was in motion. The general principles of admiralty law require that a shipowner exercise such care regarding a non-crew member as is reasonable under the circumstances. *Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 630, 79 S.Ct. 406, 409–10, 3 L.Ed.2d 550 (1959); *In re Catalina Cruises, Inc.,* 137 F.3d 1422, 1425 (9th Cir.1998). Gonzales and her parents do not cite to any case law establishing that it was unreasonable for Fun Time not to specifically warn Osborne or Vanillo about an activity that was prohibited by Arizona law, *i.e.* driving a boat above a wakeless speed with passengers on the bow, *see Craine v. United States,* 722 F.2d 1523, 1525 (11th Cir.1984) ("The law imposes no requirement that one who rents equipment such as a boat or vehicle instruct the renter on every possible danger that could be faced[,]") nor do they make any effort to explain why any additional warnings were legally required given the specific warning signs on the boat's gates. *See Pearce v. United States,* 261 F.3d 643, 650 (6th Cir. 2001) (Court concluded that while Army Corps of Engineers had a duty to warn of the danger of boating around a dam due to turbulent water caused by discharges from the dam's turbines, it satisfied that duty by placing danger warning signs between the boat ramp and the dam.) They also fail to explain what additional evidence related to

---

**6.** Gonzales and her parents do not explain why evidence of Osborne and Vanillo's boating experience should come from Fun Time, as opposed to the two women themselves. The Court has not been cited to anything in the record mentioning what efforts Gonzales and her parents have made to obtain relevant discovery from participants other than those associated with Fun Time.

**7.** It is not clear to the Court whether the training contention raised by Gonzales and her parents includes some implication that

Fun Time had a legal duty to inquire into the boating experience of its renters. *See Joyce,* 975 F.2d at 385 n. 6 (Court rejected allegation that negligent entrustment liability imposes on a boat owner the duty to make a reasonable inquiry into the training, knowledge, understanding, capability, and experience in boating of the person to whom the boat is entrusted because the standard is only whether the boat owner knew or should have known that the person being entrusted with the boat was likely to use it in an unsafe manner.)

the warnings would be elicited from the proposed depositions or why any such evidence would preclude summary judgment.[8]

Since the Court concludes that Gonzales and her parents have failed to properly file any claim in this action, and, even if they were presumed to be proper claimants, that they have failed to produce any significant probative evidence establishing any negligence on the part of Fun Time, an issue on which they would bear the burden of proof as claimants, the Court concludes that Fun Time is entitled to exoneration from liability regarding the injuries suffered by Kimberly Gonzales and that this action should be terminated. Therefore,

IT IS ORDERED that Claimants' Request for Continuance to Conduct Discovery (doc. # 35) is denied.

IT IS FURTHER ORDERED that the Court's Order of Injunction (doc. # 30), entered on July 29, 2005, is dissolved to the extent that it enjoins the prosecution in the Mohave County Superior Court of claims against defendants in *Gonzales v. Fun Time Boat Rental & Storage, LLC,* No. S–8015–CV–20050304, other than Fun Time Boat Rental & Storage, LLC.

IT IS FURTHER ORDERED that the Motion for Summary Judgment by Plaintiff Fun Time Boat Rental & Storage, LLC (doc. # 31) is granted to the extent that Fun Times Boat Rental & Storage, LLC is exonerated from any and all liability for the injuries suffered by Kimberly Gonzales on March 24, 2004. The Clerk of the Court shall enter judgment accordingly.

---

8. Although the Rule 56(f) motion states that Gonzales was not told prior to the accident that it was dangerous to be in the bow of the boat and that she did not see the warning sign on the boat's gate, the motion is not supported by any evidence from Gonzales herself.